CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
AUG 11 2008
JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| WILLIAM A. TURNER, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) Civil Action No. 7:07CV00471 |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant | ) |

## AMENDED REPORT AND RECOMMENDATION

Plaintiff, William A. Turner ("Turner"), brought this action for review of the Commissioner of Social Security's ("Commissioner") decision denying his claim for disability insurance benefits and supplemental security income under the Social Security Act ("Act"). This issue on appeal is whether the Administrative Law Judge ("ALJ") improperly evaluated Turner's credibility when determining his Residual Functional Capacity ("RFC"). The administrative record contains no opinions suggesting that Turner is disabled, and the opinions of state agency physicians as to Turner's physical and mental ability to work are both uncontradicted and consistent with his treatment records. Because the ALJ's RFC is supported by substantial evidence, the undersigned **RECOMMENDS** affirming the decision of the ALJ and **GRANTING** defendant's motion for summary judgment.

### I.

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Social Security Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "'Under the Social Security Act, [a reviewing court] must uphold the

factual findings of the [Commissioner] if they are supported by substantial evidence and were reached through application of the correct, legal standard.'" Id. (alteration in original) (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)). "Although we review the [Commissioner's] factual findings only to establish that they are supported by substantial evidence, we also must assure that [his] ultimate conclusions are legally correct." Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980).

The court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to satisfy the Act's entitlement conditions. See Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401. If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The "[d]etermination of eligibility for social security

benefits involves a five-step inquiry." Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). This inquiry asks whether the claimant (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his or her past relevant work; and if not, (5) whether he or she can perform other work. Heckler v. Campbell, 461 U.S. 458, 460-462 (1983); Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, he does not proceed to the next step. Id. Once the claimant has established a prima facie case for disability, the burden then shifts to the Commissioner to establish that the claimant maintains the RFC,[1] considering the claimant's age, education, work experience, and impairments, to perform alternative work that exists in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

---

[1] RFC is a measurement of the most a claimant can do despite his limitations. See 20 C.F.R. § 404.1545(a). According to the Social Security Administration:

> RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule.

Social Security Regulation (SSR) 96-8p. RFC is to be determined by the ALJ only after he considers all relevant evidence of a claimant's impairments and any related symptoms (e.g. pain). See 20 C.F.R. § 404.1529(a).

3

## II.

Turner, born in 1965, was 37 years old at the date of his injury of July 10, 2002.[2] (Administrative Record ("R.") at 41, 118). He graduated high school and completed one year of college. (R. 73) Prior to his injury, Turner worked as carpenter, supervisor, line worker, and forklift operator. (R. 260) On July 10, 2002, Turner was involved in an accident in which he fell 20 to 25 feet from a ladder and suffered fractures of his right tibial plateau and his bilateral calcaneus. (R. 118, 122) Injuries suffered as a result of this accident form the basis of his application for benefits. Turner alleges disability due to knee and foot pain. (R. 249-50)

Immediately following the accident, Turner was admitted to Roanoke Memorial Hospital. (R. 118) Both heels and his right knee were extremely swollen and he experienced extreme pain upon any attempt to move his right knee or either foot. (R. 118) Turner was treated with open reduction internal fixation with a plate and screws. (R. 126) In June, 2004, he noticed a small wound on his right knee. (R. 122) On August 6, 2004, upon determination that the area was infected, Dr. John Edwards removed the four pieces of hardware from his knee. (R. 122,126)

On February 2, 2006, Dr. William Humphries ("Humphries") examined Turner. (R. 140) Dr. Humphries noted that Turner was unable to walk without his orthotically adjusted tennis shoes due to severe pain in both feet. (R. 141) Dr. Humphries concluded that Turner, with appropriate breaks, "should be able to stand and walk two hours in an eight-hour day." (R. 142) Further, Turner "would be limited to lifting 25 pounds occasionally and 10 pounds frequently . . . [and] occasional climbing, crawling and kneeling." (R. 141)

---

[2]Although Turner was injured on July 10, 2002, he claims an onset date of March 18, 2005. (Mem. in Supp. of Pl.'s Mot. For Summ. J., Dkt. #11).

4

On February 24, 2006, Dr. Vergel Atienza ("Atienza") examined Turner and discussed a plan for dealing with his chronic pain in both heels. (R. 146) She noted that the range of motion on Turner's right knee was "somewhat limited" and observed a decreased range of motion of his toes. Dr. Atienza recommended that Turner stay on non-steroidal, anti-inflammatory drugs. (R. 146)

Dr. Randall Hays ("Hays"), a state agency physician reviewed the record on March 6, 2006 and made a physical RFC assessment. (R. 148) Dr. Hays found, consistent with Dr. Humphries' opinion, that Turner could stand and/or walk with normal breaks for a total of at least two hours in an eight-hour workday and could sit with normal breaks for about six hours in an eight-hour workday. (R. 149)

On April 13, 2006, Dr. Alfred Durham ("Durham") examined Turner upon complaints of a tearing sensation and burning pain in his left leg. (R. 157) Dr. Durham noted chronic lower extremity pain following Turner's heel fractures. (R. 157) Dr. Durham stated that Turner had "good flexion and extension" of his right knee with "no obvious dysfunction" and that Turner's pain resulting from the heel fractures was "typical." (R. 158) He determined that Turner should try a Transcutaneous Electrical Nerve Stimulator unit ("TENS unit") for a month to combat the chronic pain. (R. 158) Dr. Durham concluded that although Turner would not be able to go back to work as a carpenter, he could secure a job "where he does not have to be on his feet so long." (R. 158) Further, Turner could "use mental skills rather than physical skills and might consider some vocational rehabilitation as well." (R. 158) In a letter dated May 11, 2006, Dr. Durham restated his belief that it would not be smart for Turner to return to the building trade and that it "would be better for him to seek alternative education and employment." (R. 167)

Another physical RFC assessment was conducted by Dr. Thomas Phillips ("Phillips"), a state agency physician, on April 28, 2006 to reconsider the issue in light of Dr. Durham's opinion. (R. 159) Dr. Phillips found, consistent with the opinions of both Dr. Humphries and Dr. Durham, that Turner could stand and walk with normal breaks for two hours in an eight-hour workday and sit with normal breaks for six hours in an eight-hour workday. (R. 160)

On September 30, 2006, Turner had x-rays taken of his right knee and both heels at the Salem Veterans' Affairs Medical Center ("Salem VAMC"). (R. 193) Dr. Robert Creekmore found degenerative changes and demineralization around Turner's right knee probably related to surgery and inflammatory disease and also noted a possible meniscal tear. (R. 193) He found no loss of calcaneal heights or inflammatory disease in Turner's heels, but noted that the "tip of the inferior screws may be penetrating the inferior calcaneal cortext." (R.194)

On November 20, 2006, Dr. James McLeod ("McLeod") examined Turner at the Salem VAMC. (R. 225) Dr. McLeod found "swelling, grinding, and occasional catching in the right knee" and stated that Turner had "traumatic arthritis of the right knee." (R. 225) He recommended Clinoril two times a day and an injection of the knee with Marcain and Kenalog. (R. 225) Turner returned to Dr. McLeod on December 20, 2006 and was further diagnosed with "traumatic arthritis in the subtalar region of both ankles and with fractured calcanei." (R. 224) Dr. McLeod recommended Indocin four time a day and Euflexxa injections. (R. 224) On January 19, 2007, Turner was outifitted with a right hinged knee brace. (R. 213)

## III.

It is clear from this record that Turner has not met his burden of establishing that he is disabled. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). There is no medical opinion

6

in the record suggesting that Turner is disabled, and the ALJ was well justified in relying on the uncontradicted state agency assessments of Turner's physical and mental RFC which formed the basis for the hypothetical question posed to the Vocational Expert ("VE") at step five. (R. 261) Indeed, the opinions of both state agency physicians are consistent with those of Dr. Humphries and Dr. Durham that Turner could work in some place other than the manual labor field.

Turner stressed that the ALJ did not properly credit his testimony at the administrative hearing regarding his functional limitations and inability to engage in substantial gainful employment. Turner testified that he must lay down three or four times a day to deal with swelling in his ankles and feet. (R. 256) Based on a careful review of the medical evidence in the administrative record, however, the ALJ was plainly correct to find that "there is no need to elevate his legs in any of his doctor's orders." (R. 18) As detailed above, Turner's medical history simply does not support the physical limitations he claims. As such, the Commissioner's decision is supported by substantial evidence.

In light of conflicting evidence contained in the record, it is the duty of the ALJ to fact-find and to resolve any inconsistencies between a claimant's alleged symptoms and his ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Accordingly, the ALJ is not required to accept Turner's subjective allegation that he is disabled by pain, but rather must determine, through an examination of the objective medical record, whether he has proven an underlying impairment that could reasonably be expected to produce the symptoms alleged. Craig v. Chater, 76 F.3d 585, 592-93 (4th Cir. 1996) (stating the objective medical evidence must corroborate "not just pain, or some pain, or pain of some kind or severity, but the pain the claimant alleges she suffers."). Then, the ALJ must determine whether Turner's statements

7

about his symptoms are credible in light of the entire record. Credibility determinations are in the province of the ALJ, and courts normally ought not interfere with those determinations. See Hatcher v. Sec'y of Health & Human Servs., 898 F.2d 21, 23 (4th Cir. 1989).

After carefully reviewing the entire record, there is no reason to disturb the ALJ's credibility determination. See Shively v. Heckler, 739 F.2d 987, 989-90 (4th Cir. 1984) (finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight). The ALJ was correct to find that Turner's allegations that are not supported by the medical records.

Further, it is clear from the record that the ALJ considered all of the evidence and formulated an appropriate hypothetical question to the VE which fairly set out Turner's impairments. The record reflects that the ALJ considered all of Turner's impairments, including "chronic pain and numbness in his lower extremities", and posed to the VE a comprehensive hypothetical question. (R. 261) The ALJ considered Turner's impairments in combination to arrive at Turner's RFC and craft an appropriate hypothetical posed to the VE. As such, the ALJ's decision falls well within the analytical framework set out in Walker v. Bowen, 889 F.2d 47, 50-51 (4th Cir. 1989).

In recommending the affirmation of the final decision of the Commissioner, the undersigned does not suggest that Turner is entirely free of all pain and subjective discomfort. To the contrary, Turner's medical records establish that he is subjected to chronic pain as a result of his unfortunate accident. However, the objective medical record simply fails to document the existence of any condition which would reasonably be expected to have resulted in total

disability from all forms of substantial gainful employment. The ALJ properly considered all of the subjective and objective factors in adjudicating plaintiff's claim for benefits. It follows that all facets of the Commissioner's decision in this case are supported by substantial evidence.

Accordingly, it is **RECOMMENDED** that defendant's motion for summary judgment be **GRANTED** and plaintiff's motion for summary judgment be **DENIED**.

The Clerk is directed to transmit the record in this case to Honorable Samuel Wilson, United States District Judge. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within ten (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

The clerk is also directed to send a copy of this Report and Recommendation to all counsel of record.

Enter this 11th day of August, 2008.

Michael F. Urbanski,
United States Magistrate Judge